**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DEMETRIUS GEYER | : | |
| | : | PRISONER CASE NO. |
| v. | : | 3:05-cv-695 (JCH) |
| | : | |
| WAYNE CHOINSKI, et al.[1] | : | DECEMBER 1, 2006 |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. No. 24]**

Plaintiff Demetrius Geyer ("Geyer"), currently confined at the Northern Correctional Institution in Somers, Connecticut, commenced this civil rights action *pro se* pursuant to 28 U.S.C. § 1915. Geyer alleges that defendants Casey, Harrigan, Perkins and Pryor used excessive force against him and were deliberately indifferent to his serious medical needs. He also alleges that defendants Choinski and McGill failed to properly train and supervise the other defendants.

The defendants have filed a motion for summary judgment. For the reasons that follow, the defendants' motion is granted.

I.   STANDARD OF REVIEW

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Rule 56(c), Fed. R. Civ. P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The moving party may satisfy this

---

[1] The named defendants in the amended complaint are Warden Wayne Choinski, Major Jeffrey McGill, Lieutenant Joe Casey and Correctional Officers F. Perkins, Harrigan and Pryor. The court has corrected the spelling of defendant Pryor's name.

burden "by showing–that is pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted).

A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact.'" Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted). A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.) (quoting Anderson, 477 U.S. at 248), cert. denied, 506 U.S. 965 (1992). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, "the non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir.1990) (quotations and citations omitted). Thus, "'[t]he mere of existence of a scintilla of evidence in support of the [plaintiffs'] position will be insufficient; there must be evidence on which the jury could reasonably find for the [plaintiffs].'" Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004)

(quoting Anderson, 477 U.S. at 252).

The court "resolve[s] all ambiguities and draw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought." Patterson v. County of Oneida, NY, 375 F.3d 206, 218 (2d Cir. 2004).  Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).  If, "'as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'"  Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004) (quoting Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996)).

Where one party is proceeding pro se, the court reads the pro se party's papers liberally and interprets them to raise the strongest arguments suggested therein.  See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  Despite this liberal interpretation, however, a "bald assertion," unsupported by evidence, cannot overcome a properly supported motion for summary judgment.  Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

II.     FACTS[2]

At the time of the incident, Geyer was confined in Phase I of the Administrative Segregation Program at Northern Correctional Institution. In Phase I, inmates must be restrained at all time when they leave their cells. At least twice prior to the incident giving rise to this action, Geyer was convicted in state court of assaulting correctional staff. In addition, approximately two weeks before the incident, while handcuffed with his hands in front of his body, Geyer slipped out of his handcuffs and assaulted staff.

Prior to the incident, Geyer had witnessed other inmates holding open the food traps in their cell doors and throwing things out of the food traps. On September 23, 2003, Geyer held his food trap open because he wanted a plunger to unclog his toilet. Geyer had his hand on the trap with his fingers curled around the edge. The shift supervisor called defendant Casey.

Defendant Casey told Geyer that, if he removed his hand from the trap, defendant Casey would give him a plunger. Geyer refused to remove his hand. Over the next five minutes, defendant Casey gave Geyer at least sixteen orders to remove his hand from the food trap. Geyer refused all orders, sometimes verbally, other times nonverbally. Defendant Casey then sprayed five one-second bursts of cap stun into

---

[2]The facts are taken from defendants' Local Rule 56(a)1 Statement [Doc. No. 24-2] and attached exhibits. With their motion for summary judgment, the defendants filed a Notice to Pro Se Litigant [Doc. No. 24-5] informing Geyer of his obligation to respond to the motion for summary judgment and of the contents of a proper response. Despite this notice, Geyer has not responded to defendants' motion. Accordingly, the defendants' facts are deemed admitted. See D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement will be deemed admitted unless controverted by the statement required to be served by the opposing party in accordance with Rule 56(a)2.").

Geyer's cell. Geyer admitted at his deposition that the cap stun did not really affect him. Defendant Casey then sprayed three one-second bursts of another chemical agent into Geyer's cell. The second chemical agent also had little effect on Geyer, who attempted to grab the container and use the chemical agent against correctional staff. Defendant Casey was not wearing a protective face mask during the use of either chemical agent, and the institutional videotape does not show that he was adversely affected by the chemical agents.

Geyer removed his hand from the food trap on several occasions, but immediately put it back when correctional staff tried to close the trap. At least twice, Geyer turned around as if he were going to permit correctional staff to handcuff him. Each time, however, he turned back and said that he was "not cuffing up."

At one point, Geyer's hand was resting on the food trap but his fingers were not curled over the edge. Defendant Pryor began closing the trap. When he realized what was happening, Geyer did not pull his hand back into the cell. Instead, he forced his hand out of the food trap. As the trap closed, Geyer's left pinky finger got caught by the trap causing some of the fleshy part of his fingertip to be severed.

When he informed the correctional officers that his finger had been severed, they handcuffed Geyer and brought him to the medical screening room. Because of his prior history of assaultive behavior and ability to slip out of handcuffs, Geyer was handcuffed with his hands behind his back. The nurse arrived shortly after Geyer reached the medical screening room. Defendant Casey twice asked the nurse to tell him if Geyer needed to be transported to an outside hospital and said that he would get

a vehicle ready.

The nurse called a doctor from a facility adjacent to the correctional facility to examine Geyer's finger. While waiting for the doctor to arrive, Geyer was permitted to shower to remove any residue from the chemical agents. Geyer was dressed in dry clothes and handcuffed with his hands in front to enable the doctor to examine and treat his hand and facilitate transport to an outside hospital if necessary. Geyer did not appear in pain or distress while in the medical unit. Instead, while waiting for the doctor, he was smiling and told defendant Casey that he was laughing.

When Geyer told the doctor that he did not remember what had happened, defendant Casey described the incident. The doctor determined that Geyer needed to go to an outside hospital. Geyer's fingertip had not been retrieved after the incident and Geyer refused to tell correctional staff where it was. Staff returned to the housing unit and searched for the fingertip. Once it was located, the fingertip was placed in a container in a bag of ice to be transported to the hospital with Geyer for possible reattachment. Geyer insisted, however, that he did not want his fingertip reattached.

Immediately after the doctor finished wrapping Geyer's hand in gauze for the trip, Geyer was brought to the admitting and processing area where additional restraints were applied to prevent tampering with handcuffs during the trip. Geyer left for the hospital about 65 minutes after his fingertip was severed.

III.   DISCUSSION

The defendants move for summary judgment as to all defendants on four grounds: (1) Geyer cannot establish that defendants Casey, Harrigan, Perkins and

Pryor used excessive force against him, (2) Geyer cannot establish that defendants Casey, Harrigan, Perkins and Pryor were deliberately indifferent to his serious medical needs, (3) because defendants Casey, Harrigan Perkins and Pryor did not violate Geyer's constitutional rights, defendants Choinski and McGill cannot be found liable for failing to properly train and supervise them and (4) the defendants are protected by qualified immunity.

    A.    Use of Excessive Force Claim Against Defendants Casey, Harrigan, Perkins and Pryor

Geyer alleges that defendants Casey, Harrigan, Perkins and Pryor used excessive force against him by deploying a chemical agent and forcing the trap shut.

When confronted by a disturbance, correctional officers must balance the threat the disturbance poses to inmates, staff and others against the harm the inmate might suffer if force is used  Hudson v. McMillian, 503 US 1, 6 (1992).  This decision is made quickly and under pressure.  Id.  When considering the use of force by correctional officers, the court must determine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Id. at 6-7 (1992) (internal quotation marks and citation omitted).  The court considers objective and subjective components to an excessive force claim.  See id. at 8.

The objective component relates to the level of physical force used against the inmate and whether that force is repugnant to the conscience of mankind.  See id. at 9-10.  The subjective component focuses on whether the correctional officers had a "wanton" state of mind when they were applying the allegedly excessive force.  See id.

7

at 8. An excessive force claim cannot be decided merely by considering the extent of an inmate's injuries. United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999). (acknowledging that claim of excessive force may be established even if the victim does not suffer serious or significant injury). This approach is consistent with the view that "[e]xcessive force does not, in and of itself, establish malice or wantonness for Eighth Amendment purposes." Romano v. Howarth, 998 F.2d 101, 186 (2d Cir. 1993).

The court uses the extent of the inmate's injuries as one factor in determining whether the use of force could have been thought necessary by correctional staff or demonstrated an unjustified infliction of harm. See Hudson, 503 U.S. at 7. Other factors to be considered are the need for the use of force, the threat perceived by correctional staff, the relationship between the perceived threat, and the amount of force used and efforts by correctional staff to mitigate the amount of the force used. See Whitley v. Albers, 475 U.S. 312, 321 (1986). For example, an inmate who does not suffer serious or significant injury may establish a claim for use of excessive force if he can show that the force used was more than de minimus or was "repugnant to the conscience of mankind" and that the defendant acted with a "sufficiently culpable state of mind." Walsh, 194 F.3d at 48-50.

In support of their motion, the defendants have submitted defendant Casey's Affidavit, a copy of portions of the transcript of Geyer's deposition, and a videotape of the incident. Geyer concedes in his Amended Complaint and deposition testimony that he instigated the incident by holding open the food trap to get a plunger. He also concedes that he refused to release the trap when defendant Casey agreed to provide

a plunger. The evidence reveals that defendant Casey attempted to mitigate the use of force by giving Geyer repeated orders to release the trap. Geyer refused to comply. When defendant Casey used the chemical agent, Geyer did not release the trap. Instead, he tried to grab the container. Defendant Pryor did not attempt to close the trap until Geyer had uncurled his fingers from the edge of the trap and slid his hand back. When he realized what was happening, Geyer forced his hand out of the trap instead of withdrawing it. Defendants' uncontested evidence shows that correctional staff attempted to close the trap, restore discipline, and maintain institutional security with minimal force. Geyer has presented no evidence demonstrating that the defendants acted with sufficiently culpable states of mind. Thus, Geyer fails to meet his burden of demonstrating the existence of a genuine issue of material fact for trial. The defendants' motion for summary judgment is granted on the excessive force claim.

  B. <u>Claim for Deliberate Indifference to a Serious Medical Need Against Defendants Casey, Harrigan, Perkins and Pryor</u>

Geyer alleges that defendants Casey, Harrigan, Perkins and Pryor delayed his access to medical care, thereby displaying deliberate indifference to his serious medical need.

Deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment. <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). To prevail on such a claim, however, Ruffino must allege "acts or omissions sufficiently harmful to evidence deliberate indifference" to his serious medical need. <u>Id.</u> at 106. He must show intent to either

9

deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel. See id. at 104-05.

Mere negligence will not support a section 1983 claim since "the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law." Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003). Thus, "not every lapse in prison medical care will rise to the level of a constitutional violation," id. Rather, the conduct complained of must "shock the conscience" or constitute a "barbarous act." McCloud v. Delaney, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citing United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970)). Inmates do not have a constitutional right to the treatment of their choice. See Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986). Thus, mere disagreement with prison officials about what constitutes appropriate care does not state a claim cognizable under the Eighth Amendment. See Ross v. Kelly, 784 F. Supp. 35, 44 (W.D.N.Y.), aff'd, 970 F.2d 896 (2d Cir.), cert. denied, 506 U.S. 1040 (1992).

There are both subjective and objective components to the deliberate indifference standard. See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995). The alleged deprivation must be "sufficiently serious" in objective terms. Wilson v. Seiter, 501 U.S. 294, 298 (1991). See also Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) ("'serious medical need' requirement contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain"). The Second Circuit has identified several factors that are highly relevant to the inquiry into the seriousness of a medical

condition, which include: "'[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d. Cir. 1998) (citation omitted).  In addition, where the denial of treatment causes plaintiff to suffer a permanent loss or life-long handicap, the medical need is considered serious.  See Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000).

While a severed fingertip would merit treatment by a physician, Geyer has presented no evidence suggesting that the severed fingertip has impacted his daily activities or causes him chronic and substantial pain.  The Second Circuit has not determined whether a severed fingertip constitutes a serious medical need as a matter of law.  Other courts rely on the seriousness of the injury.  See Oxendine v. Kaplan, 241 F.3d 1272, 1278 (10th Cir. 2001) (concluding that negligent reattachment of severed finger that resulted in decaying tissue and worsening would was serious medical need).  Without evidence of the extent of the injury, the court cannot determine whether Geyer's severed fingertip constitutes a serious medical need.  For purposes of deciding this motion, however, the court assumes that Geyer had a serious medical need.

To establish deliberate indifference, then, Geyer also must present evidence that, subjectively, the defendants acted with "a sufficiently culpable state of mind." Hathaway, 37 F.3d at 66.  He must demonstrate that the defendants both knew and disregarded an excessive risk to his health or safety.  That is, the defendants "must both be aware of facts from which the inference could be drawn that a substantial risk

of serious harm exists, and [they] must also draw the inference.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

Geyer has not named as defendants any medical care providers. He premises his claim for deliberate indifference to a serious medical need on the fact that he was handcuffed behind his back before being escorted to the medical unit, and that his transport to the outside hospital was delayed while the defendants searched for and located the severed fingertip.

The defendants have presented uncontested evidence that Geyer was handcuffed behind his back in accordance with institutional rules and, because Geyer previously had slipped his handcuffs when handcuffed in front, out of concern for staff safety. In opposition, Geyer has presented no evidence suggesting that the defendants acted with the requisite subjective intent to unreasonably delay access to medical care or cause Geyer to suffer unnecessary pain. Nor has he provided evidence suggesting that, even if the alleged actions were considered unreasonable, any defendant perceived a substantial risk of serious harm.

The defendants also have submitted uncontested evidence that Geyer impeded the search for his fingertip by repeatedly stating that he did not want the fingertip reattached and refusing to tell the defendants where the fingertip was located. Geyer has presented no evidence in opposition to the motion for summary judgment suggesting that the defendants unnecessarily delayed transport to the outside hospital.

The court concludes that Geyer fails to meet his burden of presenting evidence demonstrating a genuine issue of material fact on his claim of deliberate indifference to

a serious medical need. Thus, the defendants' motion for summary judgment is granted on this claim.

      C.    <u>Supervisory Liability Claims Against Defendants Choinski and McGill</u>

Geyer also asserts a supervisory liability claim against defendants Choinski and McGill for failure to properly train and supervise the other defendants. Section 1983 imposes liability only on the official causing the violation. Thus, Geyer must show that defendants Choinski and McGill were involved in the violation of his constitutional rights. <u>See</u> <u>Hernandez v. Keane</u>, 341 F.3d 137, 144 (2d Cir. 2003). This court has concluded, however, that Geyer's Eight Amendment rights to be free from the use of excessive force and deliberate indifference to his serious medical needs were not violated. Absent a constitutional violation, Geyer's claims against defendants Choinski and McGill necessarily fail. <u>See</u> <u>Blyden v. Mancusi</u>, 186 F.3d 252, 265 (2d Cir.1999) ("Of course, for a supervisor to be liable under Section 1983, there must have been an underlying constitutional deprivation."). The defendants' motion for summary judgment is therefore granted as to the claims against defendants Choinski and McGill.

IV.    CONCLUSION

Defendants' Motion for Summary Judgment [**Doc. No. 24**] is **GRANTED**. The Clerk is directed to enter judgment and close this case.

**SO ORDERED** this 1st day of December, 2006, at Bridgeport, Connecticut.

                                  /s/ Janet C. Hall
                                  Janet C. Hall
                                  United States District Judge